# United States District Court
# Eastern District of New York

19-CV-842
(Matsumoto, D.J.)

ETAN LEIBOVITZ,

*Petitioner*,

against

QUEENS COUNTY ASSISTANT
DISTRICT ATTORNEY JARED SCOTTO
AND JONATHAN YI,

*Respondent*.

## AFFIDAVIT AND MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

JOHN M. RYAN
Acting District Attorney
Queens County
*Attorney for Respondent*
125-01 Queens Boulevard
Kew Gardens, New York  11415
(718) 286-7074

JOHN M. CASTELLANO
JONATHAN K. YI
  Assistant District Attorneys
    *Of Counsel*

MAY 31, 2019

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

AFFIDAVIT IN OPPOSITION TO PETITION FOR A
WRIT OF HABEAS CORPUS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL AND LEGAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        Petitioner's Direct Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        Petitioner's N.Y. C.P.L. §440.10 Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        Petitioner's 42 U.S.C. § 1983 Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

THE CURRENT PETITION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MEMORANDUM OF LAW IN OPPOSITION TO PETITION
FOR A WRIT OF HABEAS CORPUS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT ONE

        PETITIONER'S CLAIMS ARE ALL PROCEDURALLY BARRED
        EITHER BY AN INDEPENDENT AND ADEQUATE STATE
        GROUND OR HIS FAILURE TO RAISE THEM ON DIRECT
        APPEAL, AND, IN ANY EVENT, AND WITHOUT MERIT. . . . . . . . . . . . . 13

        A.    Petitioner's Claims are Procedurally Barred. . . . . . . . . . . . . . . . . . . . . . 14

        B.    Petitioner's Claims Are Entirely Without Merit and Do Not
               Warrant Granting Federal Habeas Relief. . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ETAN LEIBOVITZ,                          :

                                     :       **AFFIDAVIT IN**
                    Petitioner,        :       **OPPOSITION TO**
                                     :       **PETITION FOR A**
    - against -                 :       **WRIT OF HABEAS**
                                     :       **CORPUS**
                                     :
QUEENS COUNTY ASSISTANT       :
DISTRICT ATTORNEYS JARED        :       19-CV-842 (KAM)
SCOTTO AND JONATHAN YI,       :
                                     :
                  Respondent.       :
-----------------------------------------------------------------x
STATE OF NEW YORK)
             ) ss.:
COUNTY OF QUEENS )

        JONATHAN K. YI, an attorney admitted to practice law in this Court, being duly

sworn, deposes and states as follows:

        1.     I am an Assistant District Attorney, of counsel to Richard A. Brown, the

District Attorney of Queens County.  I am submitting this affidavit and the accompanying

memorandum of law in opposition to the *pro se* petition of Etan Leibovitz that was filed in the

United States District Court for the Eastern District of New York on February 12, 2019.  I make the

statements in this affidavit on information and belief, based on my review of the records and files

of the Queens County District Attorney's Office.

        2.     By agreement with the Attorney General of the State of New York, the District

Attorney of Queens County represents respondent in this matter.

        3.     In addition to the answer, the state is also submitting, via the electronic case

filing system and in hard copy, the following documents:

                a.     the minutes of the relevant proceedings and trial;

b.   petitioner's brief filed, through counsel, with the Appellate Term, Second Department for the 2d, 11th, and 13th Judicial Districts;

c.   petitioner's letter, dated May 30, 2017, seeking permission to file a *pro se* supplemental brief;

d.   the State's Respondent's brief;

e.   petitioner's motion, dated August 28, 2018, seeking an enlargement of time to file his *pro se* supplemental brief, and the September 17, 2017, appellate court's denial of that motion;

f.   petitioner's motion, dated September 29, 2017, seeking reconsideration of the denial of his motion of an enlargement of time, along with his proposed *pro se* supplemental brief, and the November 2, 2017, decision denying reconsideration;

g.   the state appellate court's April 13, 2018, decision and order, affirming the judgment of conviction;

h.   petitioner's application for leave to appeal to the New York Court of Appeals;

i.   petitioner's June 11, 2018, *pro se* motion to vacate his judgment of conviction under N.Y. C.P.L. § 440.10;

j.   petitioner's subsequent letter for leave to appeal to the New York Court of Appeals, the state's response, and that Court's denial;

k.   the State's response to petitioner's N.Y. C.P.L. § 440.10 motion, and the state trial court's denial of that motion; and

l.   petitioner's motion to reargue his N.Y. C.P.L. § 440.10 motion;

## FACTUAL AND LEGAL BACKGROUND

4.   On April 16, 2014, petitioner and co-defendant Kenneth Ward were leaving a courtroom in Queens Civil Court, where Ward had an unrelated landlord-tenant issue with his ex-wife.  As they left, Court Officer Marie Bennett noticed that petitioner was using his cell phone to record video.  Officer Bennett asked petitioner to stop recording and erase the video, but petitioner

2

refused.  Officer Bennett repeated her request, but petitioner again refused, instead calling to the crowd that the court officers were infringing upon their civil rights.  Officer Bennett radioed for assistance, while petitioner shouted to the crowd that they did not have to listen to the court officers, that they should stand up to them, and encouraged them to gather around him.  Officer Bennett moved petitioner and Ward to the court elevator banks, and several additional court officers arrived in response to Officer Bennett's radio call.  Petitioner continued to protest, and a crowd gathered around them, blocking access to the elevators.

5.      For these acts, defendant and co-defendant Ward were each charged with two counts of Disorderly Conduct (New York Penal Law § 240.20[2], [6]) (Queens County Docket 2014QN021751).[1]

6.      Sometime before the trial commenced, co-defendant Ward procured an audio recording of the proceedings inside the courtroom, which captured his and petitioner's initial encounter with Officer Bennett.

7.      On May 8, 2015, petitioner and Ward proceeded, each *pro se* but assisted by legal advisors, to a bench trial before the Honorable Judge Michelle Armstrong, Criminal Court, Queens County.[2]  At the conclusion of the trial, the court convicted petitioner of one count of Disorderly Conduct – Unreasonable Noise (Penal Law § 240.20[2]) and acquitted him of the other count of Disorderly Conduct – Unlawful Assembly (Penal Law § 240.20[6]).[3]

---

[1]Both defendants were originally charged with Obstructing Governmental Administration (Penal Law § 195.05).  The People moved to dismiss that charge and amend the complaint to include disorderly conduct.

[2]Judge Michelle Armstrong has since changed her name to Michelle Johnson.

[3] The Court acquitted co-defendant Ward of both counts.

3

8.    On November 13, 2015, the court sentenced defendant to a conditional discharge, which required him to perform five days' community service, or ten days' incarceration should he fail to complete his community service, and a fine.

9.    On April 26, 2019, the court held a violation of a conditional discharge hearing, under section 410.70 of the New York Criminal Procedure Law.  At the conclusion of the hearing, the court found that petitioner had not completed his community service as required by his conditional discharge, and imposed the alternate sentence of ten days' incarceration.[4]

**Petitioner's Direct Appeal**

10.    In a brief filed with the Appellate Term for the Second, Eleventh, and Thirteenth Judicial Districts in April 2017, petitioner, through counsel, challenged his judgment of conviction.  First, he argued that the verdict was not supported by legally sufficient proof at trial and otherwise against the weight of the evidence.   Specifically, petitioner argued that there was insufficient evidence to show that he created "unreasonable noise" and/or had the requisite intent to "cause public inconvenience, annoyance or alarm," or to recklessly create a risk of such.  Second, petitioner argued that the state trial court failed to adequately warn him of the consequences of waiving his right to trial counsel and proceeding to trial *pro se*.

11.    In its respondent's brief filed with the state appellate court in July 2017, the State opposed petitioner's claims.  First, the State argued that petitioner failed to adequately preserve his claim that the verdict was not legally sufficient.  In any event, the State argued, the evidence showed that petitioner's conduct of "shouting" and "yelling" at court attendees and court officers

---

[4]As shown below, the court did not require petitioner to perform the community service or impose the incarceratory sentence until after petitioner had exhausted his direct appeal

was "unreasonable," and that his intent to cause a public inconvenience can be inferred from the circumstances. Second, the State argued that petitioner's waiver of his right to assistance of counsel at trial was knowing, intelligent, and voluntary, because the trial court conducted a thorough inquiry to ensure that petitioner understood the nature of the right to counsel and the consequences of waiving that right.

12.    While the State's response was pending, the state appellate court granted petitioner's *pro se* motion, dated June 15, 2017, to file a *pro se* supplemental brief, and directing that he do so by September 4, 2017. In a subsequent motion dated August 28, 2017, petitioner, *pro se*, sought an enlargement of time to October 31, 2017, to file his supplemental brief. In a decision and order dated September 19, 2017, the state appellate court denied petitioner's motion for an enlargement of time. *People v. Leibovitz*, 2017 NY Slip Op 87523(U) (App. Term 2d, 11th, & 13th Jud. Dists. 2017).

13.    In a *pro se* motion dated September 29, 2017, petitioner moved to reargue his motion for an enlargement of time to file his supplemental brief. In his motion, petitioner argued that he had completed his brief and just wished the state appellate court to enlarge the filing deadline to otherwise deem it timely filed. Petitioner attached a copy of his proposed brief as an exhibit, and his proposed brief raised four issues: 1) that ADA Taylor Piscionere committed misconduct when she continued to prosecute petitioner despite a previous statement that the State did not have enough evidence to proceed with the case; 2) that ADA Jared Scotto committed prosecutorial misconduct by failing to disclose exculpatory material as required under *Brady v. Maryland*, 373 U.S. 83 (1963), and by failing to correct the false testimony of the State's witnesses as required under *Napue v. Illinois*, 360 U.S. 264 (1959); that Administrative Judge Joseph Zayas, Supreme Court, Queens

5

County, improperly denied petitioner's motion to recuse ADA Taylor Piscionere; and 4) that the state trial court improperly denied his motion for an investigator.

14.    In a decision and order dated November 2, 2017, the state appellate court denied petitioner's motion for leave to reargue his prior motion for an enlargement of time. *People v. Leibovitz*, 2017 NY Slip Op 91815(U) (App. Term 2d, 11th, & 13th Jud. Dists. 2017).

15.    In a decision and order dated April 13, 2018, the state appellate court affirmed petitioner's judgment of conviction. *People v. Leibovitz*, 59 Misc.3d 138(A) (App. Term, 2d, 11th, & 13th Jud. Dists. 2018).  The state appellate court first held that petitioner failed to adequately preserve his claim that the verdict was not supported by legally sufficient evidence and that, in any event, the evidence was legally sufficient to establish his guilt beyond a reasonable doubt. *Leibovitz*, *supra* at *1.  The state appellate court also held that the verdict was not against the weight of the evidence.

16.    Next, the state appellate court determined that the trial court secured a knowing, intelligent, and voluntary waiver of petitioner's right to trial counsel before permitting him to proceed *pro se*. *Id*. at *2.

17.    In letters dated May 14, 2018, June 21, 2018, and July 26, 2018, petitioner, through assigned counsel, sought leave to appeal to the New York Court of Appeals.  In his June 21, 2018, letter, petitioner proposed the Court of Appeals review whether the trial court and state appellate court committed reversible error when they credited witness testimony that was purportedly contradicted by video evidence (June 21, 2018, Letter at pgs. 5-6).  Petitioner also asked the Court of Appeals to review whether a defendant can be convicted of Disorderly Conduct – Unlawful Noise

when the culpable conduct is in response, and/or created by, law enforcement (June 21, 2018, Letter at pgs. 5-6).

18.    In a response dated July 12, 2018, the State opposed petitioner's application. First, the State argued that petitioner's claims were essentially attacking the legally sufficiency of the verdict, that he had failed to preserve these claims with any specificity at trial, and so were not reviewable by the Court of Appeals (July 12, 2018, Response at pg. 1).  Additionally, the State argued that, viewing the evidence in light most favorable to the prosecution, the evidence was sufficient to sustain the verdict beyond a reasonable doubt (July 12, 2018, Response at pgs. 2-3).

19.    In a decision and order dated July 25, 2018, the New York Court of Appeals denied petitioner's application for leave to appeal to that court.  *People v. Leibovitz*, 31 N.Y.3d 1150 (2018) (Fahey, J.).[5]

### Petitioner's N.Y. C.P.L. § 440.10 Motion

20.    In a *pro se* motion dated June 11, 2018, petitioner moved, under section 440.10(1)(g) of New York's Criminal Procedure Law, to vacate his judgment of conviction in state trial court on the ground that he had obtained "newly discovered evidence" which showed that the prosecutors involved in his case had committed various forms of misconduct, such as:

> a.    continuing to prosecute him of Disorderly Conduct, despite the former prosecutor's statement that the State did not have sufficient evidence to proceed with the original charges (June 11, 2018 Motion at 51-53); and

---

[5]Apparently before the parties had received the Court's decision, petitioner prepared a reply, dated July 26, 2018, to the State's opposition.  In that reply, petitioner argued that his motion to dismiss and summation together adequately preserved his challenge to the legal sufficiency of the verdict (July 26, 2018, Reply at 1).

7

b.   by not complying with his discovery demands, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and permitting the State's witnesses to commit perjury while testifying, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959) (June 11, 2018 Motion at 53-59).

21.   The "newly discovered evidence" that petitioner offered in support of these claims were the denial of his requests, under New York's Freedom of Information Law, for "[a]ny of James M. Liander's, Bureau Chief of Integrity Bureau, paperwork, files, reports, interview notes involving [petitioner's] complaint pertaining to perjury that was committed" by the State's witnesses at his trial, "and prosecutorial misconduct committed by ADA Jared Scotto."   Additionally, petitioner claimed that several prosecutors, including ADAs Piscionere and Scott, refused to speak to him and/or return his calls, which he argued was "inculpating" evidence of "stonewalling" (June 11, 2018 Motion at pgs. 11-13, 60).

22.   In a response dated November 20, 2018, the State opposed petitioner's motion, arguing that his claims were mandatorily procedurally barred, under section 440.10(2)(c) of the New York Criminal Procedure Law,  as "on the record" claims that he could have raised on direct appeal, but nonetheless failed to do so.   The State pointed out that petitioner's proposed *pro se* supplemental brief had raised similar grounds, showing that the claims were, in fact, record-based.  Alternatively, the State argued that, even if these claims were not on the record, petitioner was aware of all of the relevant facts in support of his claim and so could have placed them on the record as to have permitted review of these claims on direct appeal.   As such, the court should deny his motion under section 440.10(3)(a) of the New York Criminal Procedure Law.

23.   Finally, the State argued that petitioner's "newly discovered evidence" was not "newly discovered," as he was largely aware of all the fact supporting his claims of prosecutorial

8

misconduct prior to trial. Additionally, the State pointed out that his interpretation of the prosecutor's refusal to speak to him as inculpatory was, at best, speculative. Thus, it did not qualify as "evidence" of prosecutorial misconduct.

24.     In a decision and order dated December 6, 2018, the state trial court denied petitioner's motion to vacate his judgment of conviction. First, the court held that petitioner's "newly discovered evidence" did not qualify as such, pointing out that petitioner conceded that "the issues pertaining to perjured testimony and/or discovery violations, were extensively litigated during or prior to the trial." Additionally, the court determined that petitioner's post-trial failed attempts at contacting the several prosecutors also did not constitute "newly discovered evidence" because they would have been excluded at trial as irrelevant (December 6, 2018 Decision at 4).

25.     The court also held that petitioner's claims regarding the State's alleged failures to disclose *Brady* material and correct perjured testimony were barred as claims that he could have raised on direct appeal, as both were "extensively" addressed by the court prior to, and during, the trial (December 6, 2018 Decision at 4-5).

26.     In a *pro se* motion dated February 4, 2019, petitioner sought to reargue the denial of his motion to vacate his judgment of conviction. In an oral decision on or about February 21, 2019, the court denied his motion for reargument.

27.     According to the files and records of the Queens County District Attorney's Office, petitioner did not seek leave to appeal the denial of his motion to vacate his judgment of conviction, and his time to seek permission expired on January 6, 2019. *See* C.P.L. §§ 450.15; 460.10(4)(a).

9

**Petitioner's 42 U.S.C. § 1983 Complaint**

28.     Around the same time that petitioner's trial was scheduled to commence, he filed a *pro se* complaint, under 42 U.S.C. § 1983, in this Court alleging several constitutional violations arising out of this incident. *Leibovitz v. Barry, et. al*, Index No. 15-CV-1722.  As relevant here, petitioner claimed that the State conspired with the court officers to "mak[e] false allegations and commit[] perjury" to prosecute him (§ 1983 Complaint at 53-55, 60-61).

29.     In a decision signed on September 20, 2016, this Court granted the State's motion to dismiss the complaint, holding, *inter alia*, that petitioner's arrest and prosecution was supported by probable cause. *Leibovitz v. Barry*, 15-CV-1722 (KAM), 2016 WL 5107064, at *11-13 (E.D.N.Y. 2016).

**THE CURRENT PETITION**

30.     In a *pro se* petition dated February 11, 2019, petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising several claims.  First, petitioner repeats his claim that he was prosecuted despite the State not having sufficient evidence to prosecute him for Obstructing Governmental Administration, notwithstanding the fact that count was dismissed prior to the commencement of trial (Petition at ¶ 441-45).  Second, petitioner claims that the State committed several discovery violations, including failing to timely comply with its discovery obligations (Petition at ¶ 446) and failing to disclose *Brady* material (Petition at ¶ 451-54).  Third, petitioner repeats his claim that the prosecutor failed to correct testimony that he knew to be false, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959) (Petition at ¶ 455-70).  Petitioner also claims, for the first time, that he was deprived of his liberty without probable cause to believe had had committed a crime in violation of the Fourth Amendment, and that he was deprived of his right to

10

a jury trial by the dismissal of the top count of the complaint and addition of the two Disorderly Conduct counts (Petition at ¶ 471[b], [d]).

       31.    For the reasons more fully discussed in the accompanying memorandum of law, this Court should deny the petition as all of his claims are procedurally barred.  Specifically, his claims that the State prosecuted him without sufficient evidence, that the State violated its statutory and *Brady* discovery obligations, and that the prosecutor failed to correct testimony known to be false are all procedurally defaulted because the last state court to review these claims relied on an independent and adequate state ground in denying him relief.[6] Additionally, petitioner's claim that the State failed to satisfy its statutory discovery obligations does not present a question of Constitutional law.

       32.    Likewise, petitioner's claims that law enforcement arrested him without having probable cause to believe he committed a crime and that the State deprived him of his right to trial by dismissing the top count of the accusatory instrument are procedurally defaulted, as petitioner did not raise either of these claims on direct appeal or in his post-conviction motion.

       33.    Further, petitioner has not shown cause for the default and actual prejudice to warrant circumvention of these procedural bar.  Instead, he failed to raise these claims on direct appeal simply because he missed the filing deadline set by the state appellate court.  He also has not shown that he is "actually innocent" of the crime.

---

[6]Because petitioner can no longer raise these claims in state court, either as a result of his failure to seek leave to appeal the state trial court's denial of his post-conviction motion or his failure to raise them on direct appeal, he has satisfied the exhaustion requirement.  As discussed in the memorandum, however, they are nonetheless procedurally barred.

34.    Finally, even if this Court were to overlook these procedural bars, it should

nonetheless deny the requested relief, as petitioner's claims are utterly without merit.

**WHEREFORE**, and for the reasons stated in the attached memorandum of law, the

Court should summarily deny the petition for a writ of habeas corpus.

 

                             _____

                             Jonathan K. Yi
                             Assistant District Attorney
                             (718) 286-7074

Sworn to before me this
__ day of May, 2019

_____
Notary Public

To:    Etan Leibovitz
        83-19 141st Street
        No. 207
        Briarwood, New York 11435

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

ETAN LEIBOVITZ,                                       :
                                                      :    **MEMORANDUM OF**
                           Petitioner,                :    **LAW IN OPPOSITION**
                                                      :    **TO PETITION FOR A**
          - against -                                 :    **WRIT OF HABEAS**
                                                      :    **CORPUS**
                                                      :
QUEENS COUNTY ASSISTANT                               :
DISTRICT ATTORNEYS JARED                              :    19-CV-842 (KAM)
SCOTTO AND JONATHAN YI,                               :
                                                      :
                           Respondent.                :

-----------------------------------------------------------------x

This Memorandum of Law, together with the accompanying Affidavit, is submitted

in opposition to petitioner's application for a writ of habeas corpus.

**POINT ONE**

**PETITIONER'S CLAIMS ARE ALL PROCEDURALLY
BARRED EITHER BY AN INDEPENDENT AND ADEQUATE
STATE GROUND OR HIS FAILURE TO RAISE THEM ON
DIRECT APPEAL, AND, IN ANY EVENT, AND WITHOUT
MERIT.**

Simply put, this Court should deny the petition because they are all procedurally

barred and, in any event, without merit.  Petitioner attempted to raise the majority of his instant

claims in his *pro se* supplemental brief to the Appellate Term, but failed to timely file his brief.  He

then sought to raise those same claims in a post-conviction motion to the state trial court, but that

court determined, correctly, that those claims should have been raised on direct appeal.  Because the

last state court that adjudicated his claims clearly denied them on a state procedural ground, federal

review of those claims is foreclosed.  In similar fashion, those claims that petitioner raises now for

13

the first time in his petition are likewise procedurally barred because he failed to raise them in state court.  Further, petitioner has not shown neither cause for this default nor prejudice, or that he is "actually innocent" of the crimes charged.

And even if this Court were to review the merits of his claims, petitioner would still not be entitled to relief, as it is palpably obvious that his claims are without merit.  Accordingly, this Court should deny his petition in its entirety.

### A.    Petitioner's Claims are Procedurally Barred.

In his petition, petitioner raises several claims for relief.  But the majority of these claims were previously raised in his motion, under N.Y. C.P.L. § 440.10, to vacate his judgment of conviction.  The state court denied his motion on the ground that petitioner could have raised these claims on direct appeal, but failed to do so.  Thus, the last state court to review these claims denied them on an independent and adequate ground, separate from the federal questions at issue.  As to the claims that petitioner raises for the first time in his petition, those claims are similarly procedurally defaulted as a result of his failure to raise them on direct appeal.

### 1.    Petitioner's Claims are Foreclosed From Federal Review Because the Last State Court to Review His Claims Relied On An Independent and Adequate State Ground.

A federal habeas court will not review a claim rejected by a state court if the decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 558 U.S. 53 (2009), quoting *Coleman* v. *Thompson*, 501 U.S. 722, 729 (1991); *see Walker v. Martin*, 562 U.S. 307 (2011); *see Engle v. Issac*, 456 U.S. 107, 124-25 (1982) (failure to make contemporaneous objection to jury instructions in compliance with state law constitutes a procedural default).  This procedural bar is applicable only in cases when the last

reasoned state court decision contains a "plain statement" that the state court is relying, at least in part, on the applicable state procedural rule in deciding the claim. *Harris v. Reed*, 489 U.S. at 263-65. The Second Circuit "has held that federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground . . . ." *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) (internal citations and quotations omitted).

Here, petitioner has raised the majority of the claims in his petition in his June 11, 2018, motion, under section 440.10 of New York Criminal Procedure Law, ("440.10 Motion") in nearly the exact same language. Specifically, his claims that the State: (1) impermissibly commenced and/or continued prosecution without sufficient evidence. *Compare* Petition at ¶ 441-45 *with* 440.10 Motion at pgs. 51-53; (2) violated its statutory discovery obligations. *Compare* Petition at ¶ 446-50 *with* 440.10 Motion at pgs. 53-54; (3) violated its discovery obligations under *Brady v. Maryland*. *Compare* Petition at ¶ 451-54 *with* 440.10 Motion at pgs. 54-55; and (4) failed to correct witness testimony that the prosecutor knew to be false. *Compare* Petition at ¶ 455-70 *with* 440.10 Motion at pgs. 55-59.

In its December 6, 2018, decision and order, however, the state trial court clearly denied these claims on a state procedural ground. Quoting section 440.10(2)(c) of New York Criminal Procedure Law,[7] the state court summarily denied all of petitioner's claims, holding:

> In this case, [petitioner] avers that the [State] failed to comply with
> their *Brady* obligations; [his] demands for discovery; initiated

---

[7]That section states, in relevant part, that a court "*must* deny a motion to vacate a judgment when, [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the proscribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him." N.Y. C.P.L. § 440.10(2)(c).

15

criminal charges against him without sufficient evidence to obtain a conviction and prove his guilt beyond a reasonable doubt; and knowingly failed to correct false testimony. [Petitioner] further posits that all such violations demonstrates that his trial and conviction were tainted by prosecutorial misconduct. Here again, all of [petitioner's] claims are issues which appear on the trial record and were reviewable by an appellate court.

(December 6, 2018 Decision at 3-4). The state court therefore denied all of petitioner's claims entirely on procedural grounds – specifically, C.P.L. § 440.10(2)(c). *See People v. Cuadrado*, 9 N.Y.3d 362, 364-65 (2007) (claims reviewable on direct appeal must be so reviewed, or not at all). This procedural ground, in turn, constitutes an "independent and adequate state ground" to sustain the state court judgment and deny the habeas petition. *See Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201 (2d Cir. 2010); *Clark v. Perez*, 510 F.3d 382, 390-93 (2d Cir. 2008); *Nedd v. Bradt*, No. 13-CV-5569-CLP, 2019 WL 2124889, at *13 (E.D.N.Y. May 15, 2019).

Similarly, those claims not raised in his 440.10 Motion – specifically, that he was arrested without probable cause and that the State deprived him of his right to a jury trial by dismissing the top count of the complaint – are likewise procedurally barred. Ordinarily, his failure to raise these claims in state court would require dismissal of those claims as unexhausted. *See* 28 U.S.C. § 2254(b)(1)(A); *Rhines v. Weber*, U.S. 269, 273 (2005).

Here, petitioner did not raise either of these two claims on direct appeal or in a post-conviction motion, but these claims would clearly have been reviewable on direct appeal. As such, he was required to raise these claimed errors "on direct appeal . . . or not at all." *Cuadrado*, 97 N.Y.3d at 365. Whether petitioner's arrest comported with Fourth Amendment protections is obviously a claim that can be raised on direct appeal. *See, e.g., People v. Hill*, __ N.Y.3d __, 2019

16

WL 1937747 (May 2, 2019) (reviewing, on direct appeal, whether police had probable cause to support arrest); *People v. Joseph*, 27 N.Y.3d 1009 (2016) (same).  Likewise, since the original accusatory instrument charging petitioner with Obstructing Governmental Administration, the amended instrument charging him with Disorderly Conduct, and the bench trial itself were all part of the record, this claim was reviewable on direct appeal.  *See, e.g., People v. Suazo*, 32 N.Y.3d 491 (2018) (reviewing whether defendant, charged with Class B misdemeanors and lesser offenses, was properly tried in a bench trial).[8]

Thus, these two claims were reviewable on direct appeal, but petitioner nonetheless failed to raise them.  But because section 440.10(2)(c)  of New York Criminal Procedure Law procedurally bars him from raising these claims in a post-conviction motion (*see Cuadrado*, 97 N.Y.3d at 365), these claims are likewise procedurally barred from being raised in this petition.  *See Acosta v. Artuz*, 575 F.3d 177, 188 (2d Cir. 2009) ("Because [petitioner] cannot now present his unexhausted claim of trial error to the state courts, we deem the claim procedurally barred.").

Notwithstanding these procedural bars, a petitioner may nonetheless obtain federal habeas relief based on claims that are procedurally barred and/or defaulted if he can either show "cause and prejudice" for the procedural default, or that he is "actually innocent."  *DiSimone v. Phillips*, 461 F.3d 181, 190-91 (2d Cir. 2006).

Here, petitioner has not established "cause and prejudice" to warrant review of any of his procedurally barred and/or defaulted claims.  *See Coleman v. Thompson*, 501 U.S. 722, 746

---

[8]Under section 340.40(2) of New York Criminal Procedure Law, a defendant charged with only misdemeanors for which the maximum permissible sentence is less than six months "must be a single judge trial."  Here, petitioner was charged, under section 240.20 of New York Penal Law, with Disorderly Conduct, which carries a maximum permissible sentence of fifteen days. *See* N.Y. Penal Law § 70.15(4).

(1991); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) ("Because the required showing of cause and prejudice has not been with with respect to [petitioner's] procedurally defaulted claims, we dismiss those claims without reaching the merits."). In order to avoid dismissal, a petitioner must make "a showing of cause for the default"; that is, "'a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by state officials made compliance impracticable . . . or that the procedural default is the result of ineffective assistance of counsel." *Walker*, 41 F.3d at 829 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 [1986]).

In this case, the '"factual or legal" bases for all of petitioner's claims were, in fact, available to him when he filed his direct appeal. Indeed, his proposed *pro se* supplemental brief, attached to his Motion to Reargue the Appellate Term's Denial of an Enlargement of Time, is virtually identical to the instant petition. That he attempted to raise these claims in his *pro se* supplemental brief shows that he was aware of the factual and legal grounds for these claims when his direct appeal was pending. But these claims were not raised on direct appeal, solely attributable to petitioner's failure comply with the briefing calender established by the Appellate Term. In that same regard, it was not "interference by state officials" that prevented him from raising these claims, but his own failure to file his *pro se* supplemental brief.[9] Thus, it was not some "external factor [that] impeded his ability to comply with the relevant procedural rule." *Berry v. Lamanna*, No. 18-CV-1077 (TJM), 2019 WL 1596937, at *3 (N.D.N.Y. April 15, 2019).

---

[9]To the extent that petitioner argue appellate counsel's failure to raise these claims constitute cause, this argument must also fail, because "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486. Additionally, petitioner has never filed an application for a writ of error *coram nobis* claiming ineffective assistance of appellate counsel.

18

Because petitioner has not shown, or even attempted to identify, any cause for the procedural default, "no discussion of prejudice is necessary." And because petitioner has not alleged cause for the procedural default, this Court need not even address whether petitioner would be prejudiced by non-review of the claim. *See Murray v. Carrier*, 477 U.S. at 498 (federal courts should adhere to the "cause and prejudice test" in the conjunctive); *Francis v. Henderson*, 425 U.S. at 542 (requiring not only a showing of cause for the procedural default, but also a showing of actual prejudice); *Berry*, 2019 WL 1596937, at *3; *see also Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (since both cause and prejudice must be shown to excuse a procedural default, a finding that there was no showing of cause justifies not considering whether petitioner was prejudiced). In any event, petitioner could never show that the alleged constitutional errors resulted in a "substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions" (*Murray*, 477 U.S. at 494), because, as discussed below, his claims are without merit.

Finally, petitioner has not shown that he is "actually innocent" of the crime. "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e. that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis* 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 [1995]; *Murray*, 477 U.S> 496). "Actual innocence," however, "means factual innocence, not mere legal sufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To demonstrate "actual innocence," a habeas petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. As the Supreme Court describes it, "the *Schlup* standard

19

is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006).

Here, petitioner has not provided any new evidence to show that he was actually innocent of the crimes for which he was convicted. *See Day v. Taylor*, 459 F.Supp.2d 252, 258 (S.D.N.Y. 2006) ("To show a fundamental miscarriage of justice, [petitioner] would need to submit *compelling new evidence* pointing to his actual innocence in order to open the door for this Court to review the merits of his claim.") (emphasis added). Indeed, he could not claim that he was actually innocent, given his admissions that he was recording inside the courthouse despite being repeatedly told that it was prohibited, as well as his cell phone recording that was admitted into evidence, he would be hardpressed to make such a claim (Petition at ¶¶ 129-201). *See Bruno v. Griffin*, 16-CV-4432 (LGS), 2018 WL 4521213, at *5 (S.D.N.Y. Sep. 21, 2018) (applying procedural bar to habeas petition where petitioner made no claim to be actually innocent"); *Jacobs v. Demars*, 13-CV-3684 (JFB), 2014 WL 3734323, at *6 (E.D.N.Y. 2014) (petitioner did not show that failure to consider his claim would result in miscarriage of justice where he made no claim he was actually innocent). Indeed, it is undeniable that he used his cell phone to record inside a courthouse, despite repeated instructions that it was prohibited to do so. When the court officers attempted to stop him, he instead called out to the crowd and encouraged the crowd to observe what was happening. Any claim of "actual innocence," would only distill down to a disagreement of whether his conduct constituted Disorderly Conduct – Unreasonable Noise, or not. But while petitioner may disagree, the fact-finder and the Appellate Term both found that he committed Disorderly Conduct, convicting him and affirming the judgment of conviction, respectively, and petitioner has not provided any evidence that was not before either of those two courts.

In short, this Court should not review petitioner's claims because they are procedurally barred from review. Indeed, the state trial court expressly relied on a state procedural ground to deny a substantive review of the bulk of petitioner's claims that he raises in the instant petition. That reliance is both independent from a determination of federal law and adequate to support the judgment. Although petitioner raises additional claims that were not expressly denied, those claims would either also be so denied on the same procedural ground or be deemed unexhausted – in any event, inappropriate for federal habeas relief And because petitioner cannot show both cause for his procedural default and that he would suffer prejudice from non-review of the claims, or that he would suffer a miscarriage of justice, this Court should not review petitioner's procedurally defaulted claims.

**B.** **Petitioner's Claims Are Entirely Without Merit and Do Not Warrant Granting Federal Habeas Relief.**

Even if this Court were to overlook the procedural bars, it should nonetheless deny the petition because petitioner's claims are meritless. First, petitioner claims that the State committed prosecutorial misconduct by charging him with Obstructing Governmental Administration without probable cause to do so (Petition at ¶ 441-45). This Court, however, has previously determined that "[p]robable cause to prosecute [petitioner] for obstructing governmental administration clearly existed." *Leibovitz v. Barry*, 15-CV-1722, 2016 WL 5107064, at *13 (E.D.N.Y. 2016). There is no reason to depart from this Court's earlier determination, and so this claim fails for the reasons stated in this Court's previous decision.

And although petitioner claims that he was continued to be prosecuted on false information, this information, as further discussed below, amounts to minor inconsistencies, wholly insufficient to establish a constitutional violation.

21

Next, petitioner claims that the State failed to comply with its statutory discovery obligations (Petition at ¶ 446). But a federal court entertaining a habeas petition of a state defendant "is limited on habeas review to a determination of whether a challenged [state action] involves an erorr of constitutional magnitude; federal habeas relief does not lie for errors of state law." *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Green v. Artuz*, 990 F. Supp. 267, 270 (S.D.N.Y. 1998). Relevant here, "[t]here is no general Constitutional right to discovery in a criminal case. . . ." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Thus, petitioner's claim that the State did not comply with its statutory discovery obligations does not present a constitutional question for which habeas relief can be granted. *See Jamison v. Griffin*, 15-CIV-6716 (PKC) (AJP), 2016 WL 1698350 (S.D.N.Y. 2016); *Adams v. Khahaifa*, 08-CV-0121 (MAT), 2010 WL 2509970, at *7 (W.D.N.Y. 2010) ("petitioner's claims stem from C.P.L. § 240 . . . and thus do not present federal constitutional questions upon which habeas relief can be granted.").

In any event, petitioner's claim that the State failed to comply with its discovery obligations is without merit. Here, although petitioner sought out the audio recording, court minutes, and the names of the parties who appeared on the court calender on the day of the incident, New York courts have held that the State is under no obligation to obtain and disclose evidence that is not in their possession or control. *See People v. Colavito*, 87 N.Y.2d 423 (1988); *People v. Robinson*, 53 A.D.3d 63 (2d Dept. 2008); *see also Davis v. Strack*, 270 F.3d 111, 124 fn. 4 (2d Cir. 2001) (in a habeas petition, "federal courts must . . . defer to state-court interpretations of the state's laws"). While the State may be deemed to have constructive possession over law enforcement agencies (*see People v. Nova*, 206 A.D.2d 132 [1st Dept. 1994]), a court is obviously not a "law enforcement agency," but a wholly separate branch of government. Thus, the State had no obligation to disclose

the documents it did not possess, nor were the State required to produce documents that did not already exist.  *See People v. Hayes*, 17 N.Y.3d 46, 51 (2011) (neither police nor prosecution have affirmative obligation to seek out potentially exculpatory evidence); *see also Morgan v. Salamack*, 735 F.2d 354 (2d Cir. 1984);  *Farrell v. LaBuda*, 94 A.D.3d 1195 (3d Dept. 2012) ("A prosecutor is not constitutionally or statutorily required to create discoverable evidence").

Petitioner next claims that the State failed to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) (Petition at ¶¶ 451-55).  Under *Brady*, the State has an obligation to disclose known evidence that is "materially favorable" to the accused.  *See U.S. v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004).  "There are three components of a true *Brady* violation: The evidence must be favorable to the accused . . .; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Here, petitioner has failed to establish that a *Brady* violation occurred because has not shown either that the evidence was suppressed by the State or that prejudice resulted from the non-disclosure.  First, the prosecutor's statement, "And we were directed not to provide this" does not, contrary to petitioner's characterization, show that the State suppressed the evidence.  On May 11, 2015, co-defendant Ward stated that he had obtained a recording of the courtroom proceedings inside Queens Civil Court and sought to admit it into evidence.  When the prosecutor objected on the grounds that co-defendant and petitioner did not disclose the recording as required in his demand for reciprocal discovery, co-defendant Ward responded that he and petitioner had "put in discovery demands requesting this information and the minutes from proceeding in Room 406B from the

23

People." The prosecutor responded, "And we were directed not to provide that." (May 11, 2015, Proceedings at 4).

Contrary to petitioner's characterization that this statement reflects some grandiose, nefarious plot to convict him of a violation – which New York does not even recognize as a crime (*see* N.Y. Penal Law § 10.00[6]) – there is a much more rational explanation which appears to escape him. On May 8, 2015, the state trial court repeated its previous directives to the prosecutors to obtain the names and shield numbers of the court officers that were on duty the day of the incident. The court continued that it denied the request of petitioner and co-defendant for the prosecutor to obtain the names of "every possible person . . . that may have been present in the courtroom at that time" nor did it require the prosecutor to be complicit in their "fishing expedition" (May 8, 2015, Proceedings at 7).

Thus, when co-defendant stated that he and petitioner had requested the calendar information and the minutes from the court, the prosecutor's response, "we were directed not to provide that" reflected the state court's order limiting the scope of disclosure. In other words, the State did not "suppress" the evidence; rather, the State abided by the state trial court's rulings limiting the scope of discovery, which correctly recognized petitioner's request as a fishing expedition and correctly determined that the State was not obligated to procure evidence on defendant's behalf.

Another reason why the State did not "suppress" this information was because petitioner and co-defendant "either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence." *U.S. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) (internal quotations omitted). Petitioner himself was obviously aware of when and where the incident took

24

place, and so there was no good reason why he could not obtain the information that he sought himself. Indeed, co-defendant did exactly that. In essence, petitioner's claim rests on the incorrect belief a prosecutor's failure to discover evidence on a defendant's behalf constitutes a *Brady* violation. This notion that has long been rejected *See U.S. v. Agurs*, 427 U.S. 97, 109 (1976); *Morgan v. Salamack*, 735 F.2d 354, 354 (2d Cir. 1984).

Moreover, defendant cannot possibly show that he was prejudiced by any non-disclosure. The audio recording and information that petitioner alleges the State suppressed was nonetheless entered into evidence by co-defendant. Co-defendant also had the minutes of the civil court proceeding, and so either he or defendant could have entered the minutes into evidence (or asked the state trial court to take judicial notice of their contents) if those minutes contained exculpatory information. After entering the audio recording into evidence, petitioner and co-defendant Ward cross-examined Court Officer Bennet with certain alleged inconsistencies between her testimony and the recording. Thus, petitioner had ample opportunity to effectively utilize the purported *Brady* information at trial, and so no *Brady* violation occurred. *See U.S. v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001) ("as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process").

Petitioner next claims that the prosecutor failed to correct perjured testimony known to be false, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959) (Petition at ¶¶ 456-69). Petitioner, however, "labors under a serious misapprehension of what constitutes perjury." *Dixon v. Conway*, 613 F. Supp. 2d 330, 37-72 (W.D.N.Y. 2009). As the Second Circuit has noted, "minor inconsistencies alone do not constitute perjury, but merely present a credibility question to be resolved by the jury." *U.S. v. Bortnovsky*, 879 F.2d 30, 33 (2d Cir. 1961). Inconsistencies and

discrepancies equally attributable to "flaws of memory" do not constitute perjury. *See Campbell v. Greene*, 440 F. Supp. 2d 125, 147 (N.D.N.Y. 2006).

Here, petitioner's claim that the witnesses committed perjury and/or the prosecutor knew that they had done so essentially rests on the prosecutor seeking preclusion of the audio recording because he had not disclosed it earlier as part of his reciprocal discovery obligations. Under petitioner's conspiracy theory, the prosecutor sought preclusion of the audio recording because he and the court officers had devised a clandestine plot to convict him of a violation, and admission of the recording would have otherwise thwarted their attempts (except that it did not).

But again, there is a far more simple and rational explanation. *See Dixon*, 613 F. Supp. 2d at 372 (rejecting petitioner's claim that State and police engaged in perjury where he "offered no plausible motive or explanation as to why the prosecutor and the police officers . . . would engage in a conspiracy and commit perjury, subjecting themselves to possible criminal liability, in an attempt to secure [his] conviction."). Section 240.30(1)(b) of New York Criminal Procedure Law, a defendant "shall disclose and make available for inspection, photographing, copying or testing, subject to constitutional limitations any photograph, drawing, tape, or other electronic recording which the defendant intends to introduce at trial." Preclusion of the evidence not timely disclosed is one appropriate sanction for a defendant's non-compliance with this obligation. *See, e.g., People v. Williams*, 48 A.D.3d 1108 (4th Dept. 2008).

Here, petitioner and co-defendant first apprised the prosecutor that they had the audio recording of the courtroom proceedings on Friday, May 8, 2015, immediately before the trial was scheduled to begin. The prosecutor stated that he had served "reciprocal discovery in the demand on Monday [May 4, 2015]," but petitioner and co-defendant had not disclosed the audio recording

26

at all until the trial was scheduled to begin. The prosecutor then simply stated, "Asking for preclusion, Judge" (May 8, 2015, Proceedings at 13-14). Such a request was reasonable in light of petitioner's non-compliance with his discovery obligations, and does not, contrary to petitioner's speculation, suggest a more shadowy witch-hunt. *See People v. Brown*, 306 A.D.2d 12 (1st Dept. 2003) (court properly precluded testimony of defendant's alibi witness, where notice of such evidence was "grossly untimely").

Moreover, petitioner has not, other than relying on pure speculation, shown that the prosecutor was actually aware of any discrepancies between the court officers' testimony and the audio recording of the courtroom proceeding. The prosecutor first became aware of the audio recording immediately before Court Officer Marie Bennett, the first court officer, testified, but he did not have the opportunity to listen to it at that moment. Officer Bennett testified and the case was adjourned for the following Monday. It was only *after* Officer Bennett testified that the prosecutor had the opportunity to listen to the tape and thus notice any discrepancies between the audio recording and Officer Bennett's testimony. So when Officer Bennett first testified, the prosecutor would presumably have no reason to doubt her testimony. And as discussed, the small discrepancies between her testimony and the audio recording did not amount to perjury.

Petitioner also claims that the prosecutor failed to correct Lieutenant Dawn O'Brien's testimony, which he claims was also perjurious in light of his cell phone recording (Petition at ¶¶ 465-67). But the recording did not record the entirety of the incident, and so petitioner's reliance solely on the recording as proof that Lieutenant O'Brien falsely testified is misplaced. Instead, the recording only captured that portion of the incident *after* Officer Bennett had moved them towards the elevator banks and *after* additional court officers had arrived. And, in any event, the alleged

27

discrepancies in the lieutenant's testimony were minor and do not constitute perjury. The prosecutor therefore had no obligation to correct such minor inconsistencies. *See Dixon*, 613 F. Supp. 2d at 371-72 ("minor inconsistencies based on differences' in witnesses' perceptions, the frailty of human memory, and simple ministerial errors . . . is insufficient [as a matter of law] to establish perjury.").

Petitioner's remaining claims require little discussion. He claims, without argument, that he was arrested without probable cause (Petition at ¶ 471[b]). This Court has, in petitioner's 42 U.S.C. § 1983 claim arising out of this case, previously held that "[p]robable cause to prosecute [petitioner]" for both Disorderly Conduct and Obstructing Governmental Administration. *Leibovitz v. Barry*, 15-CV-1722 (KAM), 2016 WL 5107064, at *11-13 (E.D.N.Y. 2016); *see Stone v. Powell*, 428 U.S. 465 (1976). There is no reason to further discuss this point nor reason to depart from this Court's earlier conclusion.

Petitioner also claims, without argument, that he was deprived of his right to a jury trial by the State's dismissal of Obstructing Governmental Administration as the top count (Petition at ¶ 471[d]). But curiously, petitioner simultaneously complains that the accusatory instrument was facially insufficient to support the Obstructing Governmental Administration count and that count should have been dismissed (Petitioner at ¶¶ 442-43). Petitioner can hardly complain that the State "arbitrarily" dismissed the top count when even he agreed that it should have been there in the first place. Once that count was dismissed, petitioner properly proceeded to trial on the Disorderly Conduct counts remaining on the complaint.

*    *    *

28

In sum, all of petitioner's claims are procedurally barred because the last state court to review these claims dismissed them on an independent and adequate state ground.  Additionally, petitioner has not shown good cause and prejudice, or that he is actually innocent, to warrant circumvention of that procedural bar.  Even if this Court were to overlook those procedural bar, it should nonetheless deny relief, as his claims are palpably without merit.   Accordingly, this Court should deny the petition.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court should summarily deny the petition for a writ of habeas corpus.

Respectfully submitted,

JOHN M. RYAN
Acting District Attorney
Queens County

JOHN M. CASTELLANO
JONATHAN K. YI
       Assistant District Attorneys
            of Counsel

May 31, 2019

29